Citation Nr: 1602621 
Decision Date: 01/28/16 Archive Date: 02/05/16

DOCKET NO. 11-15 198 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to service connection for tinnitus.

2. Entitlement to a compensable disability rating for hypertension.

3. Entitlement to an effective date prior to February 23, 1993 for the award of service connection for posttraumatic stress disorder (PTSD).

4. Entitlement to an effective date prior to February 18, 2000 for the grant of service connection for hypertension.

5. Entitlement to an effective date prior to August 10, 1979 for the grant of service connection for recurrent fungus infection / skin infection.

6. Entitlement to increases in the "staged" (currently 50 percent prior to August 11, 2008 and 70 percent from that date) ratings assigned for (PTSD).

7. Entitlement to a rating in excess of 20 percent for diabetes mellitus, type II.

8. Entitlement to a rating in excess of 10 percent for peripheral neuropathy, left lower extremity.

9. Entitlement to a rating in excess of 10 percent for peripheral neuropathy, right lower extremity.

10. Entitlement to service connection for bilateral cataracts, claimed a secondary to service connected diabetes mellitus, type II.

11. Entitlement to an effective date prior to February 6, 2012 for the assignment of an 80 percent rating for glaucoma.

12. Entitlement to a certificate of eligibility for assistance in acquiring specially adapted housing or a special home adaptation grant.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Barone, Counsel





INTRODUCTION

The appellant is a Veteran who served on active duty from February 1968 to June 1969. This matter is before the Board of Veterans' Appeals (Board) on appeal of September 2013 (glaucoma rating effective date, with notice to the Veteran in October 2013), October 2012 (specially adapted housing or a special home adaptation grant), and August 2010 (each other issue now on appeal) rating decisions by the Columbia, South Carolina Department of Veterans Affairs (VA) Regional Office (RO). In June 2015, a videoconference hearing was held before the undersigned. A transcript of the hearing is associated with the Veteran's record.

During the June 2015 Board hearing, there was discussion of the fact that the RO's statement of the case (SOC) and each supplemental SOC (SSOC) have included the issue of earlier effective date for the award of service connection for PTSD, but that it was not clear that this issue had been adjudicated by the RO and properly appealed to the Board. Having now had the opportunity for closer review of the record, the Board has identified that: (1) the Veteran's January 2009 correspondence asserted entitlement to a 1969 effective date for service connected PTSD compensation, (2) the August 2010 RO rating decision included the determination that "Entitlement to an earlier effective date for service connection ... for post-traumatic stress disorder is denied," (3) the Veteran's February 2011 correspondence included a notice of disagreement on the issue of "effective earlier dates of SC [] PTSD...," and (4) the Veteran's May 2011 VA Form 9 properly perfected an appeal of this issue. Accordingly, the Board finds that the claim to revise the effective date for service connection for PTSD is in appellate status before the Board.

The Board has considered the concern that the PTSD service connection effective date issue was not specifically included in the discussion of the Veteran's various service connection effective date claims at the June 2015 Board hearing. However, there is no prejudice to the Veteran in proceeding with a decision on the matter at this time, as all of the service connection effective date claims must be dismissed as a matter of law. As explained in more detail, below, such freestanding claims seeking to revise an effective date established in a prior final determination are legally invalid; as a matter of law, they cannot possibly result in the sought revision of the effective dates. See Rudd v. Nicholson, 20 Vet. App. 296 (2006). Thus, no purpose could be served by further delay of resolution of this issue and the Board shall proceed with the appropriate dismissal at this time. See Mayfield v. Nicholson, 19 Vet. App. 103, 116 (2005) ("This Court has held that an error is nonprejudicial where the benefit sought could not possibly have been awarded as a matter of law.") The Veteran's presentation during his June 2015 Board hearing included suggestions that he believes a prior VA rating decision involved a clear and unmistakable error (CUE). The contention was not presented with entirely clear specification of the VA decision being referenced. In any event, the Board finds that there is no formal matter pending before the Board or the RO at this time involving a contention of CUE. Effective March 24, 2015, VA amended its adjudication regulations to require that all claims governed by VA's adjudication regulations be filed on standard forms prescribed by the Secretary. These amendments are applicable with respect to claims and appeals filed on or after March 24, 2015. Thus, the Veteran's comments about CUE during the June 2015 Board hearing have not raised any new pending matter for consideration. Nor has any standard form appropriate for initiating any manner of CUE claim been filed during the pendency of this appeal; no CUE claim is pending before the Board or the RO at this time.

The issues on appeal before the Board include multiple claims seeking assignment of earlier effective dates for awards of VA benefit entitlements. Attempts to revise a prior-assigned effective date based on an allegation of CUE in a final decision are separate and distinct claims from other manners of earlier effective date claims; the claims are adjudicated under different legal criteria, and the CUE claim must be argued with some degree of specificity. As discussed below, the Board is bound to deny some of the claims on appeal as a matter of law because there can be no freestanding claim of entitlement to an earlier effective date; the finality of the effective date assignment precludes an attempt to now claim an earlier effective date on grounds other than CUE. The Board notes that the Veteran's contentions discussed during the June 2015 hearing included references to his belief that one or more prior RO rating decisions were decided incorrectly. If he wishes to file a motion for revision of a rating decision based on CUE, he should inform the RO as to which decision and as to what issue. In this regard, the Veteran is advised that any claim of CUE must be pled with specificity. See Andre v. West, 14 Vet. App. 7, 10 (2000), aff'd sub nom, Andre v. Principi, 301 F.3d 1354 (Fed. Cir. 2002). Specifically, when attempting to raise a claim of CUE, a claimant must identify a particular rating decision and describe the alleged error in fact or law with some degree of specificity, and provide persuasive reasons as to why the result would have been manifestly different but for the alleged error. See Fugo v. Brown, 6 Vet. App. 40, 43-4 (1993).

Following the June 2015 Board hearing, the Veteran's case was placed in abeyance for a period of time, originally due to notification that new documents were pending scanning for inclusion in the Veterans Benefits Management System (VBMS) claims-file. During the abeyance period, numerous new documents were added to the VBMS claims-file and circumstances outside of the Board's control resulted in the case remaining in abeyance for an extended period, regrettably resulting in a delay in appellate review. The Board notes that the Veteran's VBMS claims file is extraordinarily large, apparently contributing to the difficulty in resolving the status of the added electronic documents. As soon as the status of the claims-file's contents was resolved, the case was removed from abeyance and every document in the record (including all of the Veteran's written correspondence) was thoroughly reviewed, and the case has been promptly adjudicated.

The matter of entitlement to an earlier effective date for the award of a 70 percent rating for PTSD was developed as a separate issue. He is also appealing the "staged" (50 and 70 %) ratings assigned for PTSD and the matter of the effective date for the 70 percent rating is encompassed in that issue. Adjudicating that issue separately would amount to considering the same issue twice, which is pointless. Therefore, the matter of an earlier effective date for a 70 percent rating for PTSD is not listed as a separate issue. 

Finally, the Board notes that the Veteran has multiple claims on appeal seeking increased ratings for service-connected disabilities. The Board's has therefore considered whether a claim of entitlement to a total disability rating based on individual unemployability (TDIU) may have been raised by the record in the context of this claim. See Rice v. Shinseki, 22 Vet. App. 447 (2009) (holding that a request for TDIU is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or as part of a claim for increased compensation). Notably, the Veteran has already been awarded a TDIU that was effective from December 15, 2000 to January 9, 2009; that TDIU status was apparently discontinued because as of that date he was awarded a combined schedular 100 percent rating. The Board is mindful of the United States Court of Appeals for Veterans Claims (Court) holding in Bradley v. Peake, 22 Vet. App. 280 (2008) (holding that there could be a situation where a veteran has a schedular total rating for a particular service-connected disability, and could establish a TDIU rating for another service-connected disability in order to qualify for special monthly compensation (SMC) under 38 U.S.C.A. § 1114(s) by having an "additional" disability of 60 percent or more ("housebound" rate)); see 38 U.S.C.A. § 1114(s). However, as confirmed on the most recent December 2015 rating codesheet, the Veteran has already been awarded and is currently in receipt of SMC under 38 U.S.C.A. § 1114(s); this award has been made on the basis of the award of a TDIU specific to the Veteran's PTSD together with separate service-connected disabilities independently ratable at 60 percent or greater. This SMC award has an effective date of April 28, 2006; it is in effect throughout the periods at issue for the increased rating claims before the Board. Accordingly, the Board finds that any further question of entitlement to a TDIU has been rendered moot in this case.

The issues of entitlement to: increased ratings for PTSD, diabetes mellitus, and peripheral neuropathy of the left and right lower extremities; an earlier effective dates for the award of an 80 percent rating for glaucoma; service connection for bilateral cataracts; and specially adapted housing or special home adaptation benefits are being REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the veteran if action on his part is required.





FINDINGS OF FACT

1. It is reasonably shown that the Veteran's tinnitus began in service and has persisted since.

2. The Veteran's history of elevated blood pressure (prior to control with continuous medication) approximates the criteria for a 10 percent rating (a history of diastolic pressure predominantly 100 or more and requiring continuous medication for control); the hypertension has not been manifested by diastolic pressure predominantly 110 or more, or, systolic pressure predominantly 200 or more.

3. An unappealed September 1997 rating decision assigned an effective date of February 23, 1993 for the award of service connection for PTSD; CUE in that decision is not alleged in any currently pending claim.

4. An unappealed January 2004 rating decision assigned an effective date of February 18, 2000 for the award of service connection for hypertension; CUE in that decision is not alleged in any currently pending claim. 

5. An unappealed January 1980 rating decision assigned an effective date of August 10, 1979 for the award of service connection for recurrent fungus infection; CUE in that decision is not alleged in any currently pending claim.

6. The instant claims for earlier effective dates for the awards of service connection for PTSD, hypertension, and recurrent fungal infection were filed in January 2009.


CONCLUSIONS OF LAW

1. Service connection for tinnitus is warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).

2. A 10 percent (but no higher) rating is warranted for hypertension. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.10, 4.104, Code 7101 (2015).

3. The September 1997 RO rating decision is final with regard to the assignment of the effective date of February 23, 1993 for the grant of service connection for PTSD. 38 U.S.C.A. § 7105 (West 2014).

4. The Veteran's freestanding claim seeking an effective date prior to February 23, 1993 for the grant of service connection for PTSD lacks legal merit. 38 U.S.C.A. §§ 7105, 5109A; 38 C.F.R. § 20.101 (2015); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

5. The January 2004 RO rating decision is final with regard to the assignment of the effective date of February 18, 2000 for the grant of service connection for hypertension. 38 U.S.C.A. § 7105 (West 2014).

6. The Veteran's freestanding claim seeking an effective date prior to February 18, 2000 for the grant of service connection for hypertension lacks legal merit. 38 U.S.C.A. §§ 7105, 5109A; 38 C.F.R. § 20.101 (2015); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

7. The January 1980 RO rating decision is final with regard to the assignment of the effective date of August 10, 1979 for the grant of service connection for recurrent fungal infection. 38 U.S.C.A. § 7105 (West 2014).

8. The Veteran's freestanding claim seeking an effective date prior to August 10, 1979 for the grant of service connection for recurrent fungal infection lacks legal merit. 38 U.S.C.A. §§ 7105, 5109A; 38 C.F.R. § 20.101 (2015); Rudd v. Nicholson, 20 Vet. App. 296 (2006).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claim. Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice should be provided to a claimant before the initial unfavorable AOJ decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Of the issues addressed by a final Board decision at this time, only the hypertension rating issue (partially granted and partially denied) requires discussion of VCAA compliance. Inasmuch as this decision grants the benefit sought with regard to the tinnitus service connection claim, there is no reason to belabor the impact of the VCAA on the matter, since any notice or duty to assist omission is harmless. The effective date claims (concerning past awards of service connection) are each being dismissed as a matter of law, and thus consideration of VCAA compliance is not necessary with regard to these issues. See Mayfield v. Nicholson, 19 Vet. App. 103, 116 (2005) ("This Court has held that an error is nonprejudicial where the benefit sought could not possibly be awarded as a matter of law."); see also Manning v. Principi, 16 Vet. App. 534 (2002); Smith v. Gober, 14 Vet. App. 227 (2002); DelaCruz v. Principi, 15 Vet. App. 143 (2002) (VCAA not applicable where law, not the factual evidence, is dispositive).

In a claim for increase, the VCAA requirement is generic notice, that is, notice of the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

The Veteran was advised of VA's duties to notify and assist in the development of the claim for an increased rating for hypertension by a letter dated in February 2009. This letter explained the evidence necessary to substantiate the claim, the evidence VA was responsible for providing, and the evidence he was responsible for providing, and informed him of disability rating and effective date criteria. A May 2014 SSOC most recently readjudicated the claim after the Veteran and his representative responded and further development was completed. He has not alleged that notice was less than adequate. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (discussing the rule of prejudicial error).

At the June 2015 hearing before the undersigned, the undersigned explained the criteria for rating hypertension and asked questions concerning the type of evidence and information the Veteran should submit to support the claim; this discussion and inquiry has led to the identification of the basis for the award of an increased rating in this decision (due to the details of the Veteran's remote history of elevated blood pressure readings). See Bryant v. Shinseki, 23 Vet. App. 488 (2010). The Veteran's testimony and the subsequent presentation of his representative reflect knowledge of the elements necessary to substantiate the claim. There is no allegation of a deficiency in the conduct of the hearing.

The Veteran's pertinent private and VA treatment records have been secured. Additional development of the evidence in connection with the hypertension rating claim is not necessary nor warranted as the Board has accepted the Veteran's own account of his pertinent blood pressure readings (presented in his June 2015 Board hearing testimony) and this decision assigns the rating corresponding to the blood pressure history the Veteran has asserted in his contentions. There is no controversy of fact requiring additional evidentiary development on this issue. The AOJ arranged for VA examinations in May 2010 and April 2011. The Board finds that the reports of these VA examinations contain sufficient clinical findings and discussion of the history and features (and related functional impairment) of the hypertension to constitute probative medical evidence adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide this matter, and that no further development of the evidentiary record is necessary. See generally 38 C.F.R. § 3.159(c)(4). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist in this matter is met.

Service Connection for Tinnitus

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). To establish service connection for a claimed disability, there must be evidence of (1) a current claimed disability; (2) incurrence or aggravation of a disease or injury in service; and (3) a causal connection between the disease or injury in service and the claimed disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

A disorder diagnosed after discharge may be service connected if all the evidence establishes that the disorder was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

Certain chronic diseases, to include tinnitus (as an organic disease of the nervous system), may be service-connected on a presumptive basis if manifested to a compensable degree within a specified period of time following separation (one year for organic disease of the nervous system). 38 U.S.C.A. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). 

Lay evidence may be competent evidence to establish incurrence. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. However, competent medical evidence is necessary where the determinative question is one requiring medical knowledge. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case, with all reasonable doubt to be resolved in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Under 38 C.F.R. § 3.303(b), service connection will be presumed where there are either chronic symptoms shown in service or continuity of symptomatology since service for diseases identified as "chronic" in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013) (holding that continuity of symptomatology is an evidentiary tool to aid in the evaluation of whether a chronic disease existed in service or an applicable presumptive period). Sensorineural hearing loss (organic disease of the nervous system) is a "chronic disease" listed under 38 C.F.R. § 3.309(a); See Fountain v. McDonald, 27 Vet. App. 258 (2015).

With a chronic disease shown as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent cause. For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b).

The Board has reviewed all of the evidence in the record. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss in detail every piece of evidence of record. See Gonzales v. West, 218 F. 3d 1378, 1380-81 (Fed. Cir. 2009). Hence, the Board will summarize the relevant evidence as appropriate, and the Board's analysis will focus specifically on what the evidence shows or fails to show as to the claim.
The Veteran's service treatment records (STRs) are silent for complaints, findings, treatment, or diagnosis of tinnitus. His service personnel records show that his military occupational specialty (MOS) was "Rifleman," with over 4 months of foreign service (noted on his DD Form 214). He has testified, including at the June 2015 Board hearing, that he experienced acoustic trauma with onset of tinnitus during service in Vietnam and also on the rifle range at Parris Island. The Board accepts that the Veteran's service as a rifleman in the context of this case suggests a reasonable likelihood of significant noise exposure during service. The Veteran claims that he is entitled to service connection for tinnitus because it began in service and is related to his exposure to noise therein. Based on his service records and his accounts, it may reasonably be conceded that he had some exposure to hazardous levels of noise in service.

In essence, tinnitus is a disability that is diagnosed based on self-report (lay observation by the person with such disability); hence, the Veteran is competent and eminently qualified to establish by his own accounts that he has tinnitus, and that he has had it continuously since service (which is one way of substantiating this service connection claim; see 38 C.F.R. § 3.303(b)). Consequently, what is presented to the Board is the question of the Veteran's credibility (i.e., in his accounts that his tinnitus began during service, and has persisted since) regarding his complaints of tinnitus since service. The conflicting evidence that must be addressed is a July 2010 VA examination report.

On July 2010 VA examination, the Veteran reported bilateral tinnitus, with reported onset in 1995. The examiner opined that the Veteran's tinnitus is less likely than not (less than 50% probability) caused by or a result of military noise exposure. The examiner noted that examinations from the Veteran's entrance and separation service audiograms indicated hearing sensitivity thresholds within normal limits. The examiner noted that the Veteran's left ear's hearing thresholds shifted during service, but stated that the shifts were "not significant." The examiner found no reports of tinnitus in the STRs, and explained that delayed onset of tinnitus following an in-service acoustic trauma was not a phenomenon supported by the pertinent medical literature. Given these factors, the examiner opined that the Veteran's current tinnitus is less likely as not due to military noise exposure. The Board finds the reasoning by the July 2010 VA examiner non-persuasive. Regarding the citations to audiological exams during his active duty service, the examiner noted only that the Veteran's reported hearing acuity was within normal limits. Hearing acuity within normal limits does not preclude the existence of tinnitus, as tinnitus may occur (and be found service-connected) even in the absence of a hearing loss disability.

The Board has considered whether a remand for a more adequate etiology opinion may be appropriate, but the Board finds that reasonable doubt can be resolved in the Veteran's favor to award the benefit sought at this time. The Veteran is competent to report experiencing a persistent pattern of tinnitus since his active duty service (or within a year following separation from service), as he appears to have done in this case, including as suggested during the June 2015 Board hearing. He told the July 2010 VA examiner that his tinnitus had onset in 1995, but explained during the June 2015 Board hearing that this was the result of his being confused during the examination. The Board observes that the July 2010 VA examination report does not clearly reflect a detailed discussion of the circumstance of the onset tinnitus; the reference to reported onset simply states "Date and Circumstances of Tinnitus Onset: 1995."

It is not in dispute that the Veteran has tinnitus, as the diagnosis of tinnitus is established based on subjective complaints (and generally is incapable of objective verification); no medical provider has contested (and the Board finds no reason to question) the Veteran's reports that he currently has tinnitus. One way of establishing a nexus between a current claimed disability and service is by showing that the claimed disability became manifest in service, and has persisted since. The Veteran has indicated that is the situation in the instant case, and the Board resolves reasonable doubt in the Veteran's favor to accept his account regarding his tinnitus symptomatology history. His report of exposure to acoustic trauma in service appears reasonably consistent with the circumstances of his service; the Board finds his explanation that he has had tinnitus ever since service not implausible, but reasonably credible. There is nothing in the record that clearly and directly contradicts his accounts. Accordingly, the July 2010 VA examiner's opinion is not found persuasive.
Resolving reasonable doubt in the Veteran's favor (as required, see 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102), the Board finds that it is shown that the Veteran's tinnitus began in service and has persisted since. The requirements for establishing service connection are met; service connection for tinnitus is warranted.

Compensable Rating for Hypertension

Disability ratings are based on average impairment in earning capacity resulting from a particular disability, and are determined by comparing symptoms shown with criteria in VA's Schedule for Rating Disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations apply, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt as to the degree of disability will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

"Staged" ratings may be warranted if the claim involves the initial rating assigned with a grant of service connection. See Fenderson v. West, 12 Vet. App. 119 (1999). Staged ratings are also appropriate in claims for increase, when factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). Where entitlement to compensation has already been established and increase in disability is at issue (as with the hypertension rating issue on appeal), the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). The analysis in this decision is undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

The Board notes it has reviewed all of the evidence in the record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims.

VA regulations allow for the assignment of an increased rating up to one year prior to receipt of a formal claim for increase, when it is factually ascertainable that an increase in disability had occurred. 38 C.F.R. §§ 3.157, 3.400(o)(2). In this case, the hypertension increased rating claim on appeal was filed by the Veteran in January 2009.

Hypertension is rated under Code 7101, which provides for a 10 percent rating when diastolic pressure is predominantly 100 or more, or systolic pressure is predominantly 160 or more, or for a history of diastolic pressure predominantly 100 or more and requiring continuous medication for control. A 20 percent evaluation is warranted for diastolic pressure predominantly 110 or more, or, systolic pressure predominantly 200 or more. 38 C.F.R. § 4.104.

During the June 2015 Board hearing, the Veteran testified that his blood pressure currently is generally approximately 130 (systolic) / 90 (diastolic), under control with medication. However, the Veteran recalled that his blood pressure history prior to beginning appropriate medical treatment "was in the 100's in the eighties till I started taking medication." The March 2011 VA examination report, and the Veteran VA medical records, reflect that the Veteran takes two daily medications on a continuous basis to control his hypertension. Significantly, the Board's review of the evidentiary record has revealed documentation reasonably corroborating the Veteran's recollection of a history of diastolic pressure predominantly 100 or more prior to the use of continuous medication for control. For instance, a bundle of private medical records received in May 1993 shows blood pressure readings including: 138/100 on November 1987; 130/110 in February 1988; 130/98 in September 1988; 136/90 in December 1988; and 130/100 in February 1989.

To substantiate entitlement to a 10 percent rating for hypertension, the evidence must show that diastolic blood pressures are predominantly 100 or more, systolic pressure are predominantly 160 or more, or that there is a history of diastolic pressures predominantly 100 with the Veteran requiring continuous medication to control blood pressure. Here, the evidence shows that the Veteran is currently on medication to control hypertension; a start date for this medication is unclear.

Although not entirely clear, the postservice medical records reasonably indicate that the Veteran's diastolic blood pressure was, at least for some significant periods of time, predominantly 100 or more on testing (for instance, from late 1987 through early 1989) prior to treatment with continuous medication for control. The Board finds that the evidence reasonably shows that the Veteran's history of elevated blood pressure (prior to control with continuous medication) approximates the criteria for a 10 percent rating (a history of diastolic pressure predominantly 100 or more and requiring continuous medication for control).

Resolving reasonable doubt in the Veteran's favor, the Board finds that a 10 percent rating is warranted for his hypertension. See 38 C.F.R. §§ 3.102, 4.7.

The criteria for a still higher (20 percent) rating for hypertension are neither met nor approximated. A 20 percent evaluation is warranted for diastolic pressure predominantly 110 or more, or, systolic pressure predominantly 200 or more. The evidence from the period on appeal does not suggest such a pattern of blood pressure readings, and the Veteran's own account of his blood pressure readings when presenting this claim at the June 2015 Board hearing characterized his blood pressure as "130/90." At no time during the appeal period does the evidence show systolic pressure predominantly 200 or more or diastolic pressure predominantly 110 or more; the Veteran has not contended otherwise.

The record does not reflect any distinct period of time during the period on appeal when the Veteran's hypertension was of a severity meeting the criteria for a different disability rating. Consequently, "staged ratings" are not warranted in this case. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Board has considered whether referral of this matter for consideration of an extraschedular rating is warranted, but finds that all identified symptoms and impairment associated with the hypertension (the need for continuous medication to control high blood pressure) are encompassed by the schedular criteria for the rating now assigned. The Veteran has not alleged any impairment of function that is not encompassed by schedular criteria (and none is evident from the record). Therefore, the schedular criteria are not inadequate, and referral for consideration of an extraschedular rating is not necessary. Thun v. Peake, 22 Vet. App. 111 (2008).

Finally, the matter of entitlement to a TDIU has been rendered moot, as discussed in the Introduction, above.

Earlier Effective Dates for Awards of Service Connection for PTSD, Hypertension, and Recurrent Fungus Infection

The Veteran contends that the effective dates of the grants of service connection for PTSD, hypertension, and recurrent fungus infection should be earlier than the effective dates currently assigned for these awards. The currently assigned effective dates for the awards of service connection are: February 23, 1993 for PTSD, February 18, 2000 for hypertension, and August 10, 1979 for recurrent fungus infection. He has asserted, including in his January 2009 claim, that the effective dates for service connection for PTSD and recurrent fungus infection should be in "1969" (the year of his separation from active service), and the effective date for service connection for hypertension should be in "1999."

In Rudd v. Nicholson, 20 Vet. App. 296, 299-300 (2006), the Court held that once a rating decision that establishes an effective date for an award becomes final, the only way that such a decision can be revised is if it contains CUE. The Court noted that any other result would vitiate the rule of finality. In other words, the Court found that there is no valid freestanding claim for an earlier effective date. The Court held that if a freestanding claim for an earlier effective date is raised, an appeal in the matter should be dismissed.

Historically, a September 1997 rating decision granted the Veteran service connection for PTSD, rated 30 percent, effective February 23, 1993. He was CUE in the September 1997 decision's assignment of the effective date has not been alleged in any claim before the Board or pending at this time. Neither is any CUE claim before the Board or otherwise pending concerning any other final decision pertinent to the assignment of an effective date for service connection for PTSD (such as any earlier denial of service connection for the disability).

A January 2004 rating decision (implementing a December 2003 Board decision) granted the Veteran service connection for hypertension, rated 0 percent disabling, effective February 18, 2000. The Veteran was advised of the decision and of his appellate rights, and did not timely appeal it; nor has he filed a claim of CUE in the January 2004 rating decision.

An August 1980 rating decision granted the Veteran service connection for a recurrent fungus infection, rated 10 percent disabling, effective August 10, 1979. He was notified of the decision and of his appellate rights, and did not timely appeal it; nor has he filed a claim alleging CUE in that decision. He also has not filed a Motion of CUE alleging CUE in a February 1979 Board decision that denied an earlier claim of service connection for a skin disorder. 

The instant claims for earlier effective dates for the awards of service connection for PTSD, hypertension, and recurrent fungal infection were filed in January 2009.

As the Veteran did not appeal the September 1997 (PTSD), January 2004 (hypertension), and August 1980 (recurrent fungal infection) rating decisions that assigned the effective dates being challenged, each of those effective date assignment determinations became final based on the evidence of record at the time. None of those determinations is subject to revision in the absence of CUE in the decision making the determination. 38 U.S.C.A. §§ 7105, 5109A; see Rudd, 20 Vet. App. 296 (2006). Because there was no submission/receipt of additional evidence pertaining to the assignment of any of these effective dates in the year following each decision, 38 C.F.R. § 3.156(b) does not apply. 

Given the facts of this case, the Veteran's current claims seeking earlier effective dates for the grants of service connection for PTSD, hypertension, and/or recurrent fungus infection are attempts to establish freestanding claims. In Rudd, the Court held that there can be no valid "freestanding" earlier effective date claim raised at any time after an RO decision becomes final. See Rudd, 20 Vet. App. at 300. The Court further indicated that because "there is no proper claim . . .," the matter must be dismissed. Id. The only means of establishing the revised/earlier effective dates sought in the instant case would be to establish CUE in a prior decision; no claim involving an allegation of CUE in a pertinent prior decision is currently before the Board. The Board is bound by the laws and regulations of VA regarding finality of prior decisions. 38 U.S.C.A. §§ 7104, 7105 (West 2014). The Board has no alternative but to dismiss these issues on appeal for failure to present valid claims.


ORDER

Service connection for tinnitus is granted.

A 10 percent rating (but no higher) for hypertension is granted, subject to the regulations governing payment of monetary awards.

The appeals seeking an effective date prior to February 23, 1993 for the grant of service connection for PTSD, an effective date prior to February 18, 2000 for the grant of service connection for hypertension, and an effective date prior to August 10, 1979 for the grant of service connection for recurrent fungal infection are dismissed.


REMAND

Increased Ratings for PTSD

The Veteran was most recently provided a VA examination for the purposes of evaluating the severity of his PTSD for compensation purposes in April 2011. His subsequent testimony, including at the June 2015 Board hearing, includes statements indicating that his symptoms have increased in severity in the time since the April 2011 VA examination. VA's General Counsel has indicated that a new examination is appropriate when there is an assertion of an increase in severity since the last examination. VAOPGCPREC 11-95 (1995). The Board finds that a remand for a new VA examination is warranted.

During the June 2015 Board hearing, the Veteran indicated that he is receiving ongoing VA treatment for PTSD, and identifying an upcoming appointment with his VA treatment provider. The Board has now been notified that there are outstanding pertinent VA treatment records. Those VA treatment records are constructively of record, and must be secured to allow for a fully informed appellate review. Bell v. Derwinski, 2 Vet. App. 611 (1992).

Finally, although the Veteran has indicated that all pertinent private medical records have been submitted to VA to associate with the evidentiary record, the Board observes that there are some suggestions of record that some potentially pertinent private treatment may not be fully documented in the available evidentiary record. During the processing of this remand, the AOJ shall have the opportunity to (a) request that the Veteran clearly identify all pertinent private treatment providers, (b) determine whether any identified private treatment records are outstanding/not available for review in the record, and (c) take any appropriate action to obtain any identified outstanding pertinent private treatment records.

VA regulations allow for the assignment of an increased rating up to one year prior to receipt of a formal claim for increase, when it is factually ascertainable that an increase in disability had occurred. 38 C.F.R. §§ 3.157, 3.400(o)(2). The August 2010 rating decision on appeal awarded the Veteran an increased rating for PTSD, from 50 percent to 70 percent effective August 11, 2008. The claim arose from the Veteran's January 7, 2009 claim, thus the period for consideration in adjudicating the claim spans back one year to January 7, 2008. 

Increased Rating for Diabetes Mellitus, Type II

The Veteran was most recently provided a VA examination for the purposes of evaluating the severity of his diabetes for compensation purposes in March 2011. His subsequent testimony, including at the June 2015 Board hearing, includes statements alleging that his symptoms have increased in severity since that examination. VA's General Counsel has indicated that a new examination is appropriate when there is an assertion of an increase in severity since the last examination. VAOPGCPREC 11-95 (1995). The Board finds that a remand for a new VA examination is warranted.

During the June 2015 Board hearing, the Veteran indicated that he is receiving ongoing VA treatment for diabetes, and specifically asserted that his VA treatment provider (Dr. Depra) had quite recently (at his most recent appointment in 2015) prescribed regulation of activities to manage the diabetes. The Board notes that documentation of a prescription of the Veteran's activities for management of his diabetes would be significant to the rating criteria for an increased rating in this case. However, a review of the available VA medical records does not find documentation of a prescription for regulation of activities. The available VA medical records in the claims-file do not span beyond 2014, and do not include the described consultation. He further testified that he regularly attended appointments with this VA medical provider on a schedule that suggests one or more pertinent appointments have followed the June 2015 Board hearing. The Board has now been notified that there are outstanding pertinent VA treatment records which are constructively of record, and must be secured to allow for a fully informed appellate review. Bell v. Derwinski, 2 Vet. App. 611 (1992).

Finally, although the Veteran has indicated that all pertinent private medical records have been submitted to VA to associate with the evidentiary record, there are some suggestions of record that potentially pertinent private treatment may be not fully documented in the available evidentiary record. As discussed above, the AOJ shall have the opportunity to resolve this concern during the processing of this remand.

Increased Ratings for Peripheral Neuropathy of the Right and Left Lower Extremities

The Veteran was most recently provided a VA examination to evaluate his peripheral neuropathy for compensation purposes in March 2011. His June 2015 Board hearing testimony indicates that his symptoms have increased in severity since then. VA's General Counsel has indicated that a new examination is appropriate when there is an assertion of an increase in severity since the last examination. VAOPGCPREC 11-95 (1995). Accordingly, a remand for a new VA examination is warranted.

As discussed above, the Veteran's testimony and the record indicate that he has been receiving ongoing pertinent VA treatment for the disabilities on appeal, and records of the more recent appointments are not yet available for review in the record. VA treatment records are constructively of record, and those pertinent must be secured to allow for a fully informed appellate review. Bell v. Derwinski, 2 Vet. App. 611 (1992).

Finally, although the Veteran has indicated that all pertinent private medical records have been submitted to VA to associate with the evidentiary record, there are some suggestions of record that potentially pertinent private treatment may not be fully documented in the available evidentiary record. As discussed above, the AOJ shall have the opportunity to resolve this concern during the processing of this remand.

Service Connection for Bilateral Cataracts

The Veteran does not contend that his bilateral cataracts were manifested in service. He contends that his bilateral cataracts should be service-connected as secondary to his service-connected diabetes mellitus. 

A disability will be service connected when that disability is "proximately due to or the result of a service-connected disease or injury." 38 C.F.R. § 3.310(a). Furthermore, any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service-connected. 38 C.F.R. § 3.310(b). Therefore, a disability may be service connected on a secondary basis by demonstrating that the disability is either (1) "proximately due to or the result of [an already] service-connected disease or injury," or (2) aggravated by an already service-connected disease or injury, "whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition . . ." Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Currently, the competent medical evidence addressing the medical question of whether such a link exists features a January 2009 VA examination report and its August 2010 addendum. This medical opinion (as amended by the August 2010 addendum) concludes that: "At this time the patient's bilateral cataracts are most likely caused by a result of normal age related changes to the ocular lens." The August 2010 addendum cites: "patient's lack of diabetic retinopathy from his diabetes mellitus at time of examination in 01/2009[,] the patient's age of approximately 64 at that time, cataracts are more commonly associated with normal age changes...."

The Board finds the opinion from the January 2009/August 2010 VA examination report inadequate. Governing law/caselaw provide that when adjudicating a secondary service connection claim VA must address the aggravation aspect of such claim. See Allen, 7 Vet. App. at 449. The January 2009 / August 2010 VA examination report does not address the question of aggravation in this matter. Although the January 2009 / August 2010 VA examination report does identify the most likely etiological cause for the bilateral cataracts disability, the medical opinion offered does not address whether the bilateral cataracts may have been aggravated by the service-connected diabetes. The Board is required to address whether the Veteran's bilateral cataracts disability has been aggravated by his service-connected diabetes mellitus, not merely whether it was caused by the diabetes mellitus. The Court has indicated that indications that a claimed disability is "not due to," "not caused by," or "not related to" a service-connected disability are insufficient to address the question of aggravation under 38 C.F.R. § 3.310(b). See Allen, 7 Vet. App. at 449 ("[I]t is a big stretch of the English language to construe the phrase 'no etiological relationship between the veteran's service connected right knee arthritis and the subsequent onset of left knee and bilateral hip arthritis' as encompassing aggravation, especially considering the use of the word 'onset.'"). Accordingly, a remand for a new VA examination to secure an adequate medical opinion regarding the etiology of the Veteran's cataracts (to include whether they were aggravated by his service-connected diabetes mellitus) is necessary. 

Finally, although the Veteran has indicated that all pertinent private medical records have been submitted to VA to associate with the evidentiary record, the Board observes that there are some suggestions of record that some potentially pertinent private treatment may not be fully documented in the available evidentiary record. As discussed above, the AOJ shall have the opportunity to resolve this concern during the processing of this remand.

An Effective Date Prior to February 6, 2012 for the Assignment of an 80 Percent Rating for Glaucoma

First, as discussed during the June 2015 Board hearing and as discussed in somewhat more detail below, an earlier effective date for the 80 percent rating for glaucoma may be warranted if the pertinent increase is factually ascertainable to have occurred during a pertinent period in 2011 and early 2012. Notably, review of the Veteran's VA medical records available in the claims-file reveals several indications that some pertinent medical evidence may be in VA's possession but not available for review in the claims-file. A January 10, 2012 "Optometry Note (Non VA)" states: "Please refer to the scanned document attached. This can be accessed in CPRS by selecting Vista Imaging Display from the Tools Menu at the top of
the screen." A November 30, 2011 "Optometry Note (Non VA)" features the same message. The January 2012 entry refers to "Rec'd copies of Eye reports from Shelby Eye Center." The November 2011 entry refers to "Rec'd copy of Eye images from unknown medical source." Other VA medical notes refer to the Veteran's pertinent medical treatment at the Shelby Eye Center, including in an October 2010 entry that refers to another "scanned document attached" viewable with the "Vista Imaging Display."

The Board does not have access to VISTA, and it appears that medical documentation pertinent to evaluating the Veteran's glaucoma during this appeal is stored therein. Although there are some private medical reports concerning the Veteran's eye health in the record, the Board is unable to confirm that the documents indicated to be available for review in VISTA are represented in the claims-file. As medical records in the custody of VA are constructively of record and may be pertinent, the Board must be able to confirm that the referenced documents are actually available for review. See 38 C.F.R. § 3.159; Bell v. Derwinski, 2 Vet. App. 611 (1992).

As discussed above, although the Veteran has indicated that all pertinent private medical records have been submitted to VA to associate with the evidentiary record, the Board observes that there are some suggestions of record that some potentially pertinent private treatment may not be fully documented in the available evidentiary record. This includes suggestions that the Veteran received private medical treatment for his eyes during the 2011-12 period pertinent to this effective date claim, and it is not entirely clear that all the pertinent private records have been obtained for appellate review. As discussed above, the AOJ shall have the opportunity to resolve this concern during the processing of this remand.

The September 2013 RO rating decision awarded an 80 percent rating for glaucoma effective from February 6, 2012; the date was cited as that which the RO believed to be the date of the claim. The Board notes, however, that the Veteran may have actually earlier filed the claim seeking an increased rating for glaucoma in correspondence from October 12, 2011. The October 2011 correspondence states: "I wish to submit the attached medical info dealing with my SC Claims for my loss of vision. My Right eye being the worse. Now my latest medical evaluation is showing that half of my left eye's vision is also gone." The Veteran resubmitted the same statement in February 2012, accompanied with phone contact to the RO that initiated the processing of the claim for an increased rating. The Veteran has expressly asserted (including in his November 2012 correspondence) that he filed the increased rating claim in October 2011. During the processing of this remand, the AOJ shall have the opportunity to consider whether the October 12, 2011 correspondence may establish an earlier date of claim in the determination of the effective date assignment for the increased rating.

In any event, VA regulations allow for the assignment of an increased rating up to one year prior to receipt of a formal claim for increase, when it is factually ascertainable that an increase in disability had occurred. 38 C.F.R. §§ 3.157, 3.400(o)(2). Consequently, in this case VA must review the evidence of record from a significant portion of 2011 to determine if there was an ascertainable increase in the Veteran's service-connected glaucoma. Notably, an unappealed January 27, 2011 Board decision (by a different Veterans Law Judge than the undersigned) adjudicated a prior claim for increased rating for glaucoma, assigning a 60 percent rating effective from January 9, 2009. The January 2011 Board decision has not been timely appealed, formally challenged, or revised, and is final based on the evidence then of record. 38 U.S.C.A. § 7104.

The January 2011 Board decision and the September 2013 RO rating decision each assigned their (different) ratings on the basis of exactly the same factual findings: total blindness of the right eye, 20/50 visual acuity in the left eye, and 20.625 (rounded to 20.62 in the Board decision) degrees of average concentric contraction in the left eye. The difference in the ratings derived from the same factual findings is explained by the fact that the January 2011 Board decision applied the (former) version of regulations it found to be applicable to the appeal at that time, and the September 2013 RO rating decision (addressing a more recently filed claim for the increased rating) applied a revised (and the current) version of 38 C.F.R. § 4.77(c). The January 2011 Board decision determined the rating appropriate for visual acuity and for visual field defect and awarded the higher of the two ratings. The September 2013 RO rating decision also separately evaluated the same visual acuity and visual field defect findings, but applied the revised version of 38 C.F.R. § 4.77(c) and accordingly combined the ratings under the provisions of § 4.25 to assign an 80 percent disability rating.

During the processing of this remand, the AOJ shall have the opportunity to consider whether it is factually ascertainable that the severity of the Veteran's glaucoma had increased to meet the criteria for an 80 percent rating prior to the date of the increased rating claim currently on appeal.

Certificate of Eligibility for Assistance in Acquiring Specially Adapted Housing or a Special Home Adaptation Grant

The Veteran's claim seeking assistance in acquiring specially adapted housing or a special home adaptation grant primarily features his belief that he is entitled to the benefit on the basis of his service-connected visual impairment. He seeks service connection for bilateral cataracts, and that issue is being remanded for additional development (although he indicated during the June 2015 Board hearing that he did not believe that he was blind in both eyes, i.e., as in the criteria for the adapted housing / home adaptation benefit sought).

Regardless of whether the adapted housing / home adaptation claim may be intertwined with the bilateral cataract issue, however, the Board notes that the Veteran's presentation at both the June 2015 Board hearing as well as his prior July 2013 RO hearing on this issue included some reference to the possibility that his service-connected peripheral neuropathy of the lower extremities may manifest in impairment that must be considered against the criteria for the adapted housing / home adaptation benefit sought. The Board has considered whether the adapted housing / home adaptation issue may be addressed by a final appellate decision at this time while development remains pending on the Veteran's claims for increased ratings for his lower extremity peripheral neuropathy.

The Veteran has been awarded a TDIU (and also a schedular 100 percent rating since January 2009), and that the criteria for the adapted housing benefits sought may be met if the Veteran's service-connected peripheral neuropathy has resulted in the loss of use of his lower extremities, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair. See 38 C.F.R. § 3.809(b) (2015). Examples under 38 C.F.R. § 3.350(a)(2) which constitute loss of use of a foot include complete paralysis of the external popliteal (common peroneal) nerve and consequent foot-drop, accompanied by characteristic organic changes including trophic and circulatory disturbances and other concomitants confirmatory of complete paralysis of that nerve. See also 38 C.F.R. § 4.63 (2015). Significantly, the Veteran's claim for increased ratings for lower extremity peripheral neuropathy includes consideration of substantially similar criteria under the applicable Diagnostic Codes of 38 C.F.R. § 4.71a, including potentially Code 8521. The Veteran's testimony during the June 2015 Board hearing and at the July 2013 RO hearing, read together, includes reference to his using a cane (the issuance of the cane is also documented in VA treatment records from December 2007 and confirmed in numerous other VA medical records), reporting tripping or falling due (at least in part) to the neurological deficits in his lower extremities, and being issued a walker (although his July 2013 testimony suggested he was not using it regularly at that time). 

As the Board is remanding the lower extremity peripheral neuropathy issues for additional development including for the purpose of obtaining evidence detailing the updated and current severity of the Veteran's lower extremity impairment, and due to the substantial similarity in the rating criteria for consideration in the lower extremity rating issues and the adapted housing benefits sought, the Board finds that final appellate review of the adapted housing / home adaptation issue must be deferred until the Board is able to review the complete evidentiary record following the pertinent development. The Court has held that two issues are "inextricably intertwined" when they are so closely tied together that a final decision cannot be rendered unless both issues have been considered. Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). As this adapted housing / home adaptation claim is inextricably intertwined with the lower extremity peripheral neuropathy rating claim being remanded, final appellate review of the matter must be deferred. (Additionally, the VA neurological examination being directed in this remand can now be directed to address questions to provide greater clarity helpful to making a fully informed determination regarding the Veteran's adapted housing / home adaptation claim.)

Accordingly, the case is REMANDED for the following action:

1. The AOJ should ask the Veteran to identify all providers of evaluation or treatment he has received for his disabilities on appeal (glaucoma during the period of 2011 through January 2012, in addition to PTSD, diabetes, and peripheral neuropathy) and to provide all authorizations necessary for VA to obtain any private records of such treatment. In particular, the AOJ should ask the Veteran to provide the information and authorization necessary for VA to obtain the complete pertinent records from Shelby Eye Clinic, The Vet Center, and the private records. The AOJ should secure for the record copies of complete clinical records (not already of record) of the evaluations and treatment from all providers identified, to specifically include all VA treatment and evaluations records that are not already associated with the claims file (or in VA's electronic records storage).

The AOJ should secure for the record copies of complete updated (i.e., any not already associated with the record) clinical records of all VA evaluations and treatment the Veteran has received for the disabilities remaining on appeal; in particular, the AOJ should obtain the records from the VA facilities (in Columbia, Spartanburg, and Greenville, South Carolina) identified by the Veteran at his June 2015 Board hearing. The AOJ should also associate with the record all existing pertinent VA medical records that are not yet associated with the claims-file, to include the documentation concerning the Veteran's eye treatment referred to in VA medical records in 2011 and 2012 as "in CPRS" and available through use of "Vista Imaging Display."

If any records sought are unavailable, the reason for their unavailability must be noted in the record. If a private provider does not respond to the AOJ's request for identified records sought, the Veteran must be so notified and reminded that ultimately it is his responsibility to ensure that private treatment records are received.

2. The AOJ should thereafter arrange for the record (to include this remand) to be forwarded to an ophthalmologist for review and a medical opinion to determine the likely etiology of the Veteran's bilateral cataracts, and in particular whether or not they have been aggravated (permanently increased in severity) by his service-connected diabetes mellitus. (If necessary to address the questions below, any required additional testing and examination should be arranged.) Based on review of the record (and examination of the Veteran, if necessary), the consulting physician should respond to the following:

(a) Is it at least as likely as not (a 50% or greater probability) that the Veteran's bilateral cataracts have been caused by the Veteran's service-connected diabetes mellitus?

(b) Is it at least as likely as not (a 50% or greater probability) that the Veteran's bilateral cataracts were aggravated (permanently increased in severity beyond natural progression) by the Veteran's service-connected diabetes mellitus? If the opinion is that a service-connected disability did not cause, but aggravated, the bilateral cataracts, the examiner should quantify, so far as possible, the degree of additional severity of bilateral cataracts resulting from such aggravation.

The examiner must explain the rationale for all opinions.

3. The AOJ should also arrange for a psychiatric evaluation of the Veteran to assess the current severity of his PTSD. The Veteran's record must be reviewed by the examiner in conjunction with the examination. The examiner should also have available for review the 38 C.F.R. § 4.130 criteria for rating mental disorders. The examiner should note the presence or absence of each symptom listed in the criteria for ratings above 70 percent (and also note any symptoms of similar gravity found that are not listed).

The examiner should also (based on review of the record and interview and examination of the Veteran) offer an opinion regarding the impact of the Veteran's service-connected PTSD on his ability to engage in substantially gainful employment consistent with his education and experience. The examiner should offer comment as to the types of employment that would be precluded by such disability and also the types of employment, if any, which would remain feasible despite the PTSD.

The examiner must explain the rationale for all opinions

4. The AOJ should arrange for an endocrinology examination of the Veteran to ascertain the severity of his type II diabetes mellitus. HIs entire record must be reviewed by the examiner in conjunction with the examination. The examiner should be provided a copy of the criteria for rating diabetes mellitus (including 38 C.F.R. § 4.119, Code 7913), and should note the presence or absence of each symptom/manifestation listed in the criteria for ratings above 20 percent. Any indicated tests or studies must be completed. Based on review of the record and examination of the Veteran, the examiner must provide opinions that respond to the following:

Please identify and describe in detail the manifestations of the Veteran's type II diabetes mellitus, and specifically note any symptoms found that are not listed in the rating criteria (and their degree of severity and impact on function). In particular, please specify whether the Veteran's diabetes medically requires prescribed regulation of activities (to avoid strenuous occupational and recreational activities).

The examiner must explain the rationale for all opinions, citing to supporting factual data (including relevant prior medical opinions) and medical literature, as appropriate.

5. The AOJ should also arrange for a neurological examination of the Veteran to assess the current severity of his right and left lower extremity peripheral neuropathy. The entire record must be reviewed by the examiner, and any tests or studies deemed necessary should be completed. The examiner must identify all related symptoms, and note their frequency, severity, and related impairment of function. The examiner should specifically respond to the following:

(a) Please indicate whether the Veteran has complete or incomplete paralysis of any pertinent nerve(s) in either lower extremity; the specific nerve(s) involved should be clearly identified in the report. If there is incomplete paralysis in any pertinent nerve of either lower extremity, the examiner should indicate whether it is mild, moderate, moderately severe, or severe with marked muscular atrophy in degree. The examiner must explain the rationale for all opinions.

(b) Please indicate whether the peripheral neuropathy manifests in the loss of use of the lower extremities such that no effective function remains other than that which would be equally well served by an amputation stump at the site of election below the knee with use of a suitable prosthetic appliance.

(c) Please indicate whether the peripheral neuropathy manifests in the loss of use of both lower extremities, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair

The examiner must explain the rationale for all opinions, citing to supporting factual data (including relevant prior medical opinions) and medical literature, as appropriate.

6. The AOJ should ensure that all of the development sought is completed, arrange for any further development suggested by additional evidence received, and then re-adjudicate the remaining claims.

Readjudication of the claim for an earlier effective date for an 80 percent rating for glaucoma should specifically include consideration of whether the Veteran's October 2011 correspondence, discussed above, may be considered the pertinent claim for the purposes of determining the date of claim, and also consider whether the increase in severity meeting the criteria for an 80 percent rating is factually ascertainable to have occurred within the applicable period on appeal prior to the date of the claim (with attention to the factual findings made in the January 2011 Board decision).

If any benefit sought remains denied, the AOJ should issue an appropriate SSOC and afford the Veteran and his representative the opportunity to respond. The case should then be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs